## PROHIBITION OF SALE OF INTOXICATING LIQUORS IN A RESIDENCE DISTRICT.

Circuit Court of Lorain County.

In the Matter of the Prohibition of the Sale of Intoxicating Liquors in a Certain Residence District in the City of Lorain, Being Part of Wards 1 and 2.

Decided, May 1, 1907.

*Residence District Local Option—Boundary of District—Determining Qualifications of Petitioners—Cross or Intersecting Street.*

1. The east rail of an electric railway company is a sufficiently recognized line to serve as a boundary of a proposed dry district under the residence district local option law.

2. In determining whether a petition for a dry district is signed by the requisite number of qualified electors within it, the judge with whom the petition is filed need not himself verify it from the poll-books and registration lists, but may take the testimony of another who has done so.

3. A street which enters but does not cross another street, is not "a cross or intersecting street," within the intendment of the residence district local option laws.

*J. F. Stranick,* for plaintiff.
*G. A. Resek,* contra.

Marvin, J.; Winch, J., and Henry, J., concur.

On the 23d of February, 1907, a petition was filed with the Hon. C. G. Washburn, a judge of the Court of Common Pleas of Lorain County, Ohio, which was signed by a large number of persons representing themselves as qualified electors, within a certain described portion of the city of Lorain and said county. The object of the petition was to prohibit the sale of intoxicating liquors as a beverage in a described district in said city. To this petition certain parties filed an answer, denying that the petition was signed by a majority of the voters of the district described in the petition, averring that the district described in the petition was not bounded by well recognized lines or

boundaries, and that the petition describes a district which contains the property abutting on. a section of West Erie avenue, lying between Broadway and Joubert street, which are two consecutive cross and intersecting streets, sixty-five per cent. of the frontage of which section of West Erie avenue is in the central or main business part of the city of Lorain.

This answer is signed by two parties, one of whom verifies it by affidavit.

The purpose of the petitioners was to obtain the prohibition of the sale of liquors in the territory described, under the provisions of an act entitled an act "to further provide against the evils resulting from the traffic in intoxicating liquors, by providing for local option in residence districts of municipal corporations." 98 Ohio Laws, p. 68.

Under this petition Judge Washburn proceeded to hear and determine the various questions necessary to be determined, before it could be said that the territory described should be such as is ordinarily denominated "dry."

The burden put upon the petitioners in this hearing was to show, first, that the petition described a district in the city and county of Lorain, which was bounded by street, corporation, or other well recognized lines or boundaries.

One of the boundaries of the district described in the petition is the east rail of the Cleveland & Southwestern Electric Railway Company. It is urged that this is not such a boundary as is required by the statute. Of course it is not a street line, nor a corporation line, but it is a line which, in a sense, may be said to be akin to a street line; it is a line easily discernible, easily ascertained, and although this rail may be changed, still the line upon which it now is, is certainly easily ascertained, and it would seem to be not difficult to ascertain substantially where that line was, even though the rails should hereafter be laid along some other line. There was no error in holding as Judge Washburn did, that this was a sufficiently definite boundary line.

*Second.* The further burden was put upon the petitioners of showing that their petition was signed by a majority of the qualified electors, residing within the described district. The

district described in the petition does not include any one full elective precinct of the city, making it manifest that it is a matter of some difficulty to determine whether a majority of the qualified electors within the district signed the petition.

R. J. Cowley was called as a witness on behalf of the petitioners, and it appears from his testimony that he had carefully examined the poll books and the registration lists of the several precincts, some part of each of which was within the district described in the petition. That he ascertained from these books the place of residence of the several signers to this petition, and that he ascertained by the same means the other voters within this residence district, and then by mathematical calculation it was shown that the signers constituted a majority of the qualified electors, as provided for in the statute.

It is urged that the clerk of the board of elections should have been called; that this would have been the better evidence. We do not understand that this would have been the *better* evidence, in the sense of that term as used in the law. It might have been stronger evidence, but it would have been of the same nature as that given by Mr. Cowley. It can not be supposed that it was contemplated by the Legislature that the judge before whom such a petition as this could be heard, would be required to count the names on the poll books and registration lists. He might well call upon some other person to do this, or the petitioners might well call upon some other person to do this. We think the testimony of Mr. Cowley was admissible, and from that testimony the judge was justified in finding that a majority of the qualified electors within the residence district signed the petition.

*Third.* The further burden was put upon the plaintiffs by Section 7 of the act referred to, to show that the described district did not contain property or premises abutting on a section of a street lying between two consecutive, cross, or intersecting streets, from street to street, whereon sixty-five per cent. of the foot frontage of such abutting property on each side of such street was occupied for and devoted to manufacturing, mercantile or other business purposes.

It is urged that this burden was not sustained by the petitioners, because included within the district is a section of West

Erie avenue, bounded on the east by Broadway, and on the west
(the defendants claim) by Joubert street, and that more than
sixty-five per cent. of 'the abutting property on each side of this
section of West Erie avenue is occupied for business purposes.

The situation is this: Broadway is a north and south street.
West Erie avenue is an east and west street. These two streets
cross each other. West of Broadway there is a street extending
from the south line of West Erie avenue southerly; this is
Joubert street. Joubert street does not cross West Erie avenue,
nor does any street corresponding with it extend north from West
Erie avenue. On the south side of that part of West Erie
avenue, between the east line of Joubert street and the west
line of Broadway, it is conceded that more than sixty-five per
cent. of the property is business property and it is claimed
by those protesting against the petition that more than sixty-
five per cent. of the property abutting on the north side of West
Erie avenue, between the west line of Broadway, and a point
opposite the east line of Joubert street, is occupied for business
purposes.

On the part of the petitioners it is said that it is a matter of
indifference whether sixty-five per cent. more or less, of this part
of the north side of West Erie avenue is occupied for business
purposes. The language of the statute is: "Lying between
two consecutive, cross or intersecting streets."

It is clear that Joubert street is not a cross street to West Erie
avenue, lying consecutive to Broadway, but it is urged that it
is an intersecting street, and that is next in order going to the
west from Broadway.

The word "intersect" is defined in the Century Dictionary,
as follows:

"To cut or divide into parts, lying or passing across; as, the
the ecliptic intersects the equator. To cut apart, separate by
intervening. 2. For example, 'Lands intersected by a narrow
frith abhor each other.' "

Webster defines the word "intersect" in these words:

"To cut into or between; to cut or cross mutually; to divide
into parts as the ecliptic intersects the equator. 2. To cut

into one another, to cut across, as the points where two lines intersect.''

Our attention·is called in the brief of counsel for the plaintiff to the case of *Calhoun Gold Mine Co.* v. *Ajax Gold Mine Co.,* 59 Pacific, 607, 613.   As this is reported in four different sets of reports, and counsel cites one of the four, it looks like rather a formidable array of authorities.   However, it is but one case, and in that case the court seems to hold that leads of minerals which come together at an angle, intersect.   But this does not, as we think, bear upon the construction to be given to the word ''intersecting,'' as used in this statute.   The property, sixty-five per cent. of which has to be used for business purposes, must be between consecutive streets.   We take it that on the north side of West Erie avenue there can be no property lying between Broadway and Joubert street, unless such property lies between the west line of Broadway and the east line of Joubert street. It would be absurd to say that property lies between two streets, and yet does not lie between some boundary line of each of said two streets, and it is certain that there is no property on the north side of West Erie avenue that lies between any boundary line of Joubert street and a boundary line of Broadway.

We reach the conclusion, therefore, that there was no error in the finding of the judge before whom this matter was tried, and that finding is affirmed.